Ladies and gentlemen, we'll take the cases in the order in which they appear on the calendar. First case is Jackson v. Roe. Counsel? Good morning, Your Honors. Gretchen Fusilier appearing on behalf of Petitioner Appellant Fred Jackson. Your Honors, this case arises out of Mr. Jackson's conviction in State Court of two counts of attempted murder, two counts of burglary, the causing of great bodily injury, and the use of a weapon, being a knife, in his attacks. In 1997, Mr. Jackson was convicted and he thereafter was appointed Appellate Counsel. Appellate Counsel raised various issues in his direct appeals to the California Appellate Court. Eventually, all of those issues were found to be, if any, harmless and the conviction was affirmed. Thereafter, it was affirmed in the year 1998, Mr. Jackson thereafter, as a pro per litigant, filed three separate petitions for habeas corpus in the State Court. In the Superior Court, the Appellate Court, and eventually in the California Supreme Court. In each petition, he raised the identical three issues, which were different from the issues raised in his direct appeal. In the dismissal by the California Supreme Court, that court cited to N. Ray Dixon. After that, Mr. Jackson filed as a state prisoner a federal habeas corpus in the District Court. When he got into the District Court, the Attorney General's Office for the State of California filed a petition or motion for dismissal. Mr. Jackson filed a traverse, and in that traverse, he raised the, as a defense showing cause and prejudice, the issue of incompetency of appellate counsel, indicating that he had not raised the issues that Mr. Jackson had requested him to raise. Kennedy, he raised it. He just mentioned he had such an issue. Pardon me, Your Honor? He just mentioned that he had such an issue. He didn't actually raise it. No, he didn't indicate that an issue existed and that it was not raised. He wanted to make sure that he could raise it later. And Mr. Jackson attached in his traverse an Exhibit B, which was a letter from his then-appellate counsel, indicating in essence that he was sorry that he had not raised what Mr. Jackson felt were arguable issues, but he was willing to proceed to represent Mr. Jackson in the preparation of a petition for a habeas corpus petition. Apparently, the appointed attorney did not. Was that at the time he mentioned raised or whatever he did with respect to that issue, would it have been timely to have filed a petition regarding it, or was it already late? I believe it was already late. That letter, I believe. So that's why this becomes important as to whether or not he can continue on the original petition or whether he has to file another one, with regard to this possibly additional claim. Yes. That's one of the reasons, anyway. Yes. Eventually, the petition was dismissed in the district court on the grounds, actually it's a little ambiguous, because the court in the report and recommendation discussed the independence and adequacy of the state procedural rule by citing In re Dixon and indicated that because In re Clark and In re Harris in 1993 attempted to clarify the state procedural rule, the state procedural rule was not in effect. So the court decided to clarify previous California procedural rules and to remove any interwoven Federal constitutional considerations, clarified that eventually in 1998 in the In re Robbins case. However, in the district court, the magistrate indicated that based on In re Clark, there was an adequate, this was an adequate procedural rule, and therefore, the cites to Dixon prevented Mr. Jackson from presenting his petition for habeas corpus in the Federal district court. However, interestingly enough, at the end of the reporting recommendation, the recommendation that was made was that the petition be dismissed not on grounds of procedural default, but on grounds that it had not been, it was a mixed petition and there were some unexhausted claims in the petition. In the reporting recommendation, reference was made to three options that were being given to Mr. Jackson. Those options were essentially all the same, because regardless of which option Mr. Jackson chose, his petition would have been dismissed in the district court for failings to comply with the one-year statute of limitations under APA, under the Anti-Terrorism and Effective Death Penalty Act. Mr. Jackson actually filed a motion after the reporting recommendation was submitted, requesting that his petition be stayed. Also indicated to the court at that time that he had filed a petition in the California Supreme Court in his attempt to exhaust the issue of ineffective assistance of counsel. Approximately 19 days later, after he had made the request, the court approved and adopted the reporting recommendation and dismissed his petition. It was dismissed as mixed, is what you're saying. That's correct, and not on grounds of procedural default. But he was sort of warned that if he came back with just the three exhaustive claims, it would be procedural default. Well, the three options basically were. Just to jump forward a little bit, because we sort of knew all this history, but do you think the new Supreme Court case, Rimes, has any pertinence or relevance here? Your Honor, I do. Actually, I believe that Rimes v. Weber that was recently decided has significant indicate or reference and relevance to this case, because it refers to mixed petitions not being subject to automatic dismissal, as was held and referenced in the report and And in the Rimes case, I believe it indicates clearly that the decision of Rose v. Blundy did not mean to suggest that there's that mixed petitions should be automatically dismissed and that stays were inappropriate. It sets forth that if the Petitioner can show good cause. Okay. So what was the good cause here? Didn't the magistrate judge essentially decide on a Rimes-like ground that there wasn't really not good cause? Your Honor, it's essentially the magistrate and the district judge, district court judge did. However, without going into much detail and consideration of, first, Mr. Jackson's diagnosed mental disease, as we indicated, he had been diagnosed with paranoid personality disorders, some societal disorders. And one of his claims was that the trial court committed error by failing to grant in his trial after Mr. Jackson had literally stabbed his attorney in front of the jury. So there are indications, there are psychiatric reports, and those reports were available to the district court for consideration. There's nothing in the report and recommendation referencing whether or not, as Mr. Jackson attempted to develop, that maybe he was unaware that he could have done something prior to filing his first petition in the state court. However, so although reference was made that the district court found that there was insufficient cause, our position is that there was insufficient inquiry into whether or not there was actual sufficient cause. Rimes- What exactly did the district court say about the magistrate says there are no extraordinary circumstances? What did the district court say? The district court followed the magistrate's report and recommendation, Your Honor. Well, it doesn't say there's no just cause. It says there's no extraordinary circumstance. Is that the same test? I don't believe it is, Your Honor. However, I think in this particular case, it's ambiguous to know whether or not he was- Well, you said before- The focus- You said that the district court found that there was no cause for the delay. Is that based on the finding that there's no extraordinary circumstance? My reading of this is that I believe that's what the court was trying, was attempting to express. I don't- But it didn't express it. It was only attempting to express it. Well, I think that it's subject to different interpretations. What's your interpretation if the court applies the no extraordinary circumstances test and the rule is that there has to be cause for the delay? My interpretation is- Would you say that's the right test? I don't think that extraordinary circumstances would necessarily be the right test to develop sufficient cause. Well, if it's not the right test, then shouldn't we remand so it can apply the right test? I believe that that is the appropriate solution and resolution to this case. I think not only to supply the right test to determine if cause existed, but I also believe under Rimes the court knew at the time that it dismissed the case that Mr. Jackson was not dilatory at that point in time. He had indicated to the court that he had, in fact, filed a petition with the California Supreme Court. It can also dismiss if it feels there's no merit to the underlying claim. That's correct, Your Honor. However, we do have a statement by one of the justices in the denial by the California Supreme Court. Justice George, I believe it was, indicated that he believed the matter should be set for an order to show cause hearing. So although it was ultimately dismissed in the California Supreme Court, there may be some indication consistent with Rimes that it potentially had some kind of merit to the claim. That's pretty thin, isn't it? That's pretty thin, saying, you know, the one justice wanted to set it for a hearing. I mean, why is this procedurally defaulted? They cited Dixon, right? I don't believe it's procedural default on the grounds of adequacy because in In Ray the court refers to In Ray Clark. And in In Ray Clark, that court indicated that considerations can still be focused on that relates to constitutional, errors of constitutional magnitude. And in this particular case, Robbins, of course, In Ray Robbins, was decided on the 3rd of August, 1998. This matter relating to Mr. Jackson was dismissed on the 25th. So by that time, assuming that In Ray Clark still allowed the courts to look at constitutional errors, we would submit, did not provide the adequacy grounds necessary to justify a procedural default by the California Supreme Court ultimately. And that's a — Kagan. First of all, I'm not sure of the pertinence of this at this point. As you point out, the dismissal was actually not for procedural default. That's correct. It may be that down the line there would be a dismissal for procedural default of those three claims, but theoretically there would still be another one, which is the ineffective assistance claim. That's correct, Your Honor.    of those three claims, but theoretically there would still be another one, which hasn't yet, at least. Has that — anything happened in that meanwhile? Your Honor, nothing has happened in the meantime. I think the case was dismissed and the notice of the — As the exhausted provision. You said that he did go and try to exhaust that. Do we know what happened to that in California court? No, we don't. We don't know. We don't know. It's not in the record. It's not in this record. However, we do know that he had filed a petition in the California — before the California Supreme Court. He had advised the district court of that. The district court, being mindful of that, went forward and adopted the recommendations of the report and recommendation. And we've — My second question is, under Bennett v. Mueller, don't you have some responsibility to give some data, some data that indicates that there is an inadequate state ground before the State has an obligation to prove otherwise? Your Honor, my reading of Bennett v. Mueller, it seems as though the burden of proof actually is transferred to the State when the State indicates that there is a deferment of defense of procedural default. And in reading Bennett, it seems as though either party, if the burden transfers over to the petitioner, that there should be some reference to cases indicating that the procedural default applied in this instance, Mr. Jackson's case, for example, was previously well established and consistently applied. The State, in our opinion, at least we don't see anything presented by the State indicating that other than the reference to Inouye Clark, and Inouye Clark actually continued to take into consideration errors of constitutional magnitude. All right. Thank you, Kaye. Thank you very much. Good morning, Your Honors. Allie Gainsborough, Respondent. And I do believe that Rhines squarely resolves most of the issues in this case. Why does Rhines resolve the question of whether there is good cause for the delay? I think without the guidance of Rhines, I think the district court did a very good job. Nobody is criticizing the wonderful district judge. Let's start with that premise. District judges are always fine people, and they get a fine job. But now we have Rhines. Now, the question is we didn't have them. The question is does this meet the Rhines test, which is that the district judge then thought quite properly that he didn't have discretion. Now we know he had discretion to stay the case. The question is whether if he had known about Rhines or she had known about Rhines, whoever the judge is, Judge Trevisan, if he had known about Rhines, would he have been able to exercise his discretion, or would he have been required to say there was no, or did he say, that there's no good cause for the delay? Well, I believe he didn't say those exact words, but he did say there's no valid reason, and he sees no reason why Jackson could not have raised a constitutional claim in State court prior to presenting it to this Court. And the facts of the case are, the Justice asked when the statute of limitation had expired, the statute of limitation expired before we filed our motion to dismiss based on procedural bar. So the statute of limitation expired pretty soon, within 60 days of the filing of his first amendment. But you agree that, in fact, the dismissal was not for procedural bar? No, it was for being unexhausted. Okay. But it could have been. But it wasn't. Well, he offered him three ways to approach the petition, and Jackson did nothing. Had he amended it. But, in fact, he was operating from an erroneous premise for good reason, as Judge Reinhart points out. That is, his premise was that the – that there was no way the mixed petition could stay in the Court, and he was wrong about that. Right. The Court has a discretion to grant a stay in the court. So his options under current law weren't right. Well, I do think that it's consistent with what exactly happened. Because in his traverse on May 1, 2001, he cites for the first time that it's appellate counsel's fault for failing to raise these claims. So he is expressing, as early as 2001, the reason for that. And in that same traverse, he said he talks to counsel in 1997, he wanted to raise those claims, and counsel said, no, I don't think that's a good idea. In that same traverse, he recognizes that the habeas petition is not available to claims that could have been raised on appeal but were not. So that's in May 2001. He recognizes the implications. He also recognizes that an ineffective assistance of appellate counsel claims must be exhausted before it can be used to establish cause and prejudice. But he says that, and he says he's going to exhaust it. And can you stay this in the meanwhile? No, he doesn't. He doesn't have to. Well, he does later say that. Before the judge. Before, as an objection to the magistrate. Exactly. So he says it in a timely manner, as I understand. Exactly. Then in his objections to the R&R, which were filed in March of 2002, he asserts that he was unaware of his ineffective assistance of counsel claim in 2000. Now, he filed this amended petition in December of 2000. So he's acknowledging that he knew he had an IAC of appellate counsel in 2000, and yet he waited until the end of 2000 to file the Federal petition, knowing that he had an unexhausted claim that he needed to address and that he did not file that petition in State court. The R&R came out in March 7th of 2002. Petitioner signed his new habeas to the California Supreme Court on the IAC claim on March 20th, 2002, and filed a motion for abeyance on March 21, 2002. So essentially from, at his own admission, he knew this was a problem in 2000. He knew this was a problem. I thought last, when he said he knew this was a problem, he mentioned a date in 2001, I thought. In 2001 is when he filed his traverse, where he acknowledged in 1997, I talked to my appellate counsel. I knew those claims weren't going in. I told him I wanted them to go in. He said, I don't think it's a good idea. So he acknowledged that he knew these claims weren't being raised. He knew they weren't being filed. He didn't know that that was a basis for ineffective assistance. Well, he said he didn't know that until 2000. He acknowledges he didn't know that that was an ineffective assistance of counsel claim in 2000. That was in his objections to the R&R. These are his objections. In his objections to the R&R, he said he knew that there was an ineffective assistance of counsel claim in 2000. Yes. And that's at Excerpt of Record, page 258. Okay. And so he waited from 2000 or 2001 and did not file. What should he have done, in your view? He should have proceeded with a federal petition at the same time gone to State court? Well, what he should have done is when he realized there was a problem, get right into State court. And then by the time we get to that. I didn't hear you. When he first realized that there was a problem and he had a claim that he needed to exhaust, which he clearly knew. He could have filed a petition in the California Supreme Court right away. There's no split. Would that have had any effect on his federal petition? I think that the Court would have allowed him to amend an already exhausted claim. But the fact that he waited until the absolute end of the case. Well, I'm asking a slightly different question. Does, if you have a pending federal petition, and while you're having a federal petition, you go ahead and file something in State court, does it in any way affect your federal petition? Well, underlines. Does it make it subject to dismissal? Or if you don't get leave to do it for the federal court, you just go ahead and do it. Does that in any way jeopardize your federal petition? It could. If the Court considers that. At this point, it's not a mixed petition. You have a fully exhausted petition. You're out trying to exhaust the IAC claim, but you have a fully exhausted petition. Let me ask you another question. Is your understanding that Rines for any reason. May I hear the answer to. I'm sorry? May I get the. Oh, I'm sorry. Go ahead. Hear the answer to my question. At this point, he would have a fully exhausted petition raising the three claims he wanted if he had gone immediately back to the Cal Supreme when he realized in 2000. He didn't file the federal petition until December 2000. So. So he goes to the State court while he's got a pending federal petition. Does that jeopardize his federal petition? Does that render his federal petition to become unexhausted because he's now going to State court? Not unless he's amended it to include that unexhausted claim. So he could go down both tracks. He could continue on with his federal petition, do what he was doing in State court, and then eventually ask for an amendment. Exactly. Okay. I'm done. Why don't you go ahead and. Except that it's risky because it only. The reason for the whole stay procedure is because if in the meanwhile the federal petition is decided and there's nothing to attach it to, he's got a problem. Exactly. Number one. Number two, under the recent Supreme Court case about relation back, he may still have a problem. Right. Depending on. Right? Exactly. Whereas if he has a single mixed petition pending, he doesn't have those problems. Well, he has. If he does. He does have problems. I meant different problems, but he doesn't have those problems. Right. Exactly. One thing I'm trying to understand is whether the Rhines now recognizes that you can have mixed petitions in certain circumstances State. They said limited. I'm sorry? They said limited. I understand limited. But you can. We said never, and they say sometimes. Yes. The question is whether our former procedure, the one that we, that the Ninth Circuit had required, which was dismissing the unexhausted claim and possibly staying the exhausted ones. Is that, A, does it possibly still exist, and B, does it exist under the Rhines standard? Because it's unclear which one of those two actually happened here. Exactly. All right. But suppose it was the second. Suppose he did, he was told under the old system what he had to do. Is that still a valid alternative from the petitioner's point of view, that he could proceed that way instead and still ask for a stay under our former standards? I think even under the former standards, whether it was worded precisely as good cause, there was some standard of diligence why you could bring these claims in. We're not going to let you sit around for years and years, and now that the case is practically over, you want to say, oh, yeah, but I got another claim, because that foils some of the purposes of the AEDPA, of making the finality a judgment and making sure that the claims aren't stale. So I think that Rhines made that a lot clearer on what the standard should be. It was kind of subjective. But what I'm asking is, is it plain that the Rhines standard applies if the petitioner takes the other option? There are downsides to taking the other options, which is the relation back problem. But suppose he takes the other option. Is it plain that it's the Rhines standard that applies at that point rather than our former standards? He has problems. He might not want to do it. But the very fact that there's more of a risk may suggest that the standards don't need to be as stringent at that point. I think that the Rhines standard is very forgiving. It's not as subjective. I think it's a more objective test. And I think the standards that we had before on whether you could stay a petition were — Well, I thought one standard we had before was pretty much if it's going to — if there's going to be a limitations problem, you can't do it. You should stay it, no matter what. Right. And Rhines seems to say otherwise, not necessarily. Right. Right. Well, of course, I think the Rhines opinion is clear, and I think it will aid both sides to being able to decide whether a petition should be stay and abate. Thank you, counsel. Thank you. The case just argued will be submitted. The next case on the calendar is Graverman v. Teague.
judges: Reinhardt, Kozinski, Berzon